IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Trickeration, Inc.** <br> **dba Donegal Bay,** | Case No. 1:25CV00500 |
| Plaintiff, | JUDGE PAMELA A. BARKER |
| -vs- | |
| | MEMORANDUM OPINION & ORDER |
| **JAG Alliance, LLC,** <br> **dba CBD Hemp Experts,** | |
| Defendant. | |

Currently pending is Defendant JAG Alliance, LLC d/b/a CBD Hemp Expert's Motion to Dismiss, in part, Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 12.) Plaintiff Trickeration Inc. d/b/a Donegal Bay filed a Brief in Opposition on July 8, 2025, to which Defendant replied on July 22, 2025. (Doc. Nos. 20, 23.) For the following reasons, Defendant's Motion is GRANTED.

**I.     Factual Allegations[1]**

Plaintiff Trickeration Inc. d/b/a Donegal Bay (hereinafter "Plaintiff" or "Trickeration") is a national supplier and wholesaler of a wide variety of custom products for its customers. (Doc. No. 7 at ¶ 12.) Defendant JAG Alliance, LLC d/b/a CBD Hemp Experts (hereinafter "Defendant" or "JAG

---

[1] In setting forth the facts, the Court considers the factual allegations in the Second Amended Complaint (Doc. No. 7) as well as the Exhibits attached thereto (Doc. Nos. 7-1 through 7-9.)  *See Bassett v. National Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008) (noting that, in ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."). *See also Brent v. Wayne County Dep't of Human Services*, 901 F.3d 656, 694 (6th Cir. 2018).

Alliance") is a wholesale product manufacturer and distributor of wellness products, personal care, and "nutraceuticals." (*Id*. at ¶ 13.)

In March 2022, Plaintiff contracted with Defendant to supply "Donegal Bay" logo-imprinted Lotion to Plaintiff (hereinafter "the Lotion Products"), primarily for one of Plaintiff's largest customers. (*Id*. at ¶ 14.) On March 18, 2022, Plaintiff placed its first purchase order with Defendant for 250,000 units of lotion, for a total price of $587,500.00. (Doc. No. 7 at ¶ 15; Doc. No. 7-1.) As part of the parties' agreement,[2] Defendant required a pre-paid deposit for the Lotion Products in the amount of 70% of the total price, i.e., $411,250.00. (Doc. No. 7 at ¶ 15.) *See also* Doc. No. 7-1. Plaintiff wired the $411,250.00 deposit to Defendant on March 22, 2022. (Doc. No. 7 at ¶ 15.)

Plaintiff alleges that "[i]t was understood" that Plaintiff's initial order, and future orders, for Lotion Products would be charged against Plaintiff's deposit. (*Id*. at ¶ 16.) "It was also understood that Defendant would provide Plaintiff detailed invoices upon fulfillment of orders." (*Id*.) In addition, "[t]hrough several conversations between Plaintiff and Defendant, Defendant understood that one of Plaintiff's primary motives for contracting with Defendant was to meet the large quantity of products demanded by Plaintiff's largest customer on a particular timeline." (*Id*. at ¶ 17.) As part of the contract, Plaintiff and Defendant stipulated that the Lotion Products would be delivered in April, June, and July of 2022 in order to meet Plaintiff's customer's expectations. (*Id*.)

---

[2] The only document cited by Plaintiff as setting forth the terms of the parties' agreement is an Invoice dated March 18, 2022, which is attached to the Second Amended Complaint as Exhibit A. (Doc. No. 7-1.) This Invoice is from Defendant to Plaintiff for 250,000 bottles of lotion for a total purchase price of $587,500.00. (*Id*.) Under the heading "Payment Details," the Invoice provides that: "70% ($411,250) Deposit required for production." (*Id*.) No other specific terms or conditions of the parties' agreement are set forth on the Invoice itself. Plaintiff does not allege that the parties entered into any written contract or agreement other than the Invoice attached as Exhibit A to the Second Amended Complaint.

Although the parties agreed that Plaintiff was to receive the first delivery in April 2022, Plaintiff did not receive the first shipment of Lotion Products until June 2022. (*Id*. at ¶ 18.) Plaintiff repeatedly asked Defendant to "provide documents detailing how funds are allocated and inventory information related to remaining Lotion Products Defendant had on hand." (*Id*. at ¶ 19.) However, Defendant was not responsive for "several weeks at a time." (*Id*.) In addition, the remaining deliveries of Lotion Product were also late, and did not occur until July, August, and September 2022. (*Id*. at ¶ 18.)

Plaintiff alleges that Defendant's delay damaged Plaintiff's reputation with its largest customer, which cancelled part of its initial order due to Defendant's "delinquent behavior." (*Id*.) In addition, Plaintiff alleges that Defendant misled Plaintiff during a phone call in April 2023. (*Id*. at ¶ 20.) Specifically, Plaintiff alleges as follows:

> Defendant was also intentionally deceitful when he ... respond[ed] to Plaintiff in an attempt to induce Plaintiff to continue its business relationship. During a phone call on April 13, 2023, Defendant claimed to have emailed Plaintiff the breakdown invoice for the August 2022 initial partial shipment. Over the next couple of days, Plaintiff told Defendant they still had not received it. Defendant then recanted and admitted that he did not actually send the breakdown: "…many of the ingredients are expired and we are very upside down." (See Ex. B)

(*Id*.) *See also* Doc. No. 7-2. Plaintiff alleges that, from May 2023 through October 2023, Defendant continued to fail to properly respond to Plaintiff's requests for information. (*Id*. at ¶ 21.)

Meanwhile, on August 3, 2023, Plaintiff sent an email to Defendant, stating that "the lack of communication and delays in production over the last several months has been problematic" and indicating that Plaintiff may need "to start looking for alternate providers." (*Id*. at ¶ 22.) *See also* Doc. No. 7-4. Several months later, in November 2023, Plaintiff sent a letter to Defendant, explaining that "[y]our delays in responding to our requests over the last few months are resulting in

3

lost revenue and opportunities and now require us to pursue another source for the lotions." (Doc. No. 7-5.) Plaintiff stated that it "will engage counsel to formally draft a request of return of our remaining deposit and products," which it calculated to be $310,000. (*Id.*)

Despite the above, and "in an effort to use the remaining deposit," Plaintiff sent additional purchase orders to Defendant in October 2023, November 2023, and February 2024.[3] (Doc. No. 7 at ¶ 23; Doc. No. 7-6.) Defendant, however, continued to breach its contract with Plaintiff. (Doc. No. 7 at ¶ 24.) For instance, in March 2024, Plaintiff received a partial order with an invoice that included an additional $10,205.00 "for taping and bagging," a charge that was allegedly not part of the parties' contract. (*Id.*) Plaintiff immediately objected to this charge but ultimately agreed to pay half ($5,102.50), which was to be taken from Plaintiff's remaining deposit. (*Id.*) *See also* Doc. No. 7-7.

On September 27, 2024, Plaintiff sent a second letter to Defendant. (Doc. No. 7-8.) Therein, Plaintiff stated that "[s]ince our initial deposit with you in March of 2022, your responses or in many instances lack of a response has evidenced a continued pattern of neglect and breach of good faith on your part."[4] (*Id.* at PageID# 130.) Plaintiff indicated that "we cannot continue to do business in this way and are hereby terminating the relationship." (*Id.*) Plaintiff demanded the return of its remaining

---

[3] According to the Exhibits to the Second Amended Complaint, the October 2023 purchase order was in the amount of $72,868.80 and the November 2023 purchase orders were in the total amount of $91,412.65. (Doc. No. 7-6.) Plaintiff did not attach a copy of the February 2024 purchase order to the Second Amended Complaint.

[4] As an attachment to its letter, Plaintiff attached a "call and correspondence log" organized by month and date, "which shows time and time again [Defendant's] pattern of false promises and lack of timely professional responses." (Doc. No. 7-8 at PageID#s 130-134.) However, Plaintiff does not allege in the body of the Second Amended Complaint that any of the specific events listed in the "call and correspondence log" constitute fraud. Nor does Plaintiff argue, at any point in its Brief in Opposition to Defendant's Motion to Dismiss, either (1) that this Court should consider some or all of the events listed in the "call or correspondence log" as instances of alleged fraud or (2) that any of the events listed in the "call or correspondence log" would in fact satisfy the requirements of Fed. R. Civ. P. 9(b). Accordingly, the Court deems any such argument waived.

deposit, which it calculated to be $251,577.18. (*Id*.) Defendant refused to return the remaining deposit. (Doc. No. 7 at ¶ 25.)

On January 14, 2025, Plaintiff made a final attempt to recoup its remaining deposit of $251,577.18 through a third demand letter to Defendant. (Doc. No. 7 at ¶ 27; Doc. No. 7-9.) Defendant again refused to return the remaining deposit. (Doc. No. 7 at ¶ 27.)

## II. Procedural History

On March 13, 2025, Plaintiff filed a Complaint against Defendant in this Court asserting claims for breach of contract, unjust enrichment, and fraudulent misrepresentation. (Doc. No. 1.) Plaintiff then filed an Amended Complaint on March 25, 2025, followed by a Second Amended Complaint on April 1, 2025.[5] (Doc. Nos. 5, 7.) In its Second Amended Complaint, Plaintiff raises the same three claims for breach of contract (Count I), unjust enrichment (Count II), and fraudulent misrepresentation (Count III). (Doc. No. 7.) Plaintiff seeks damages in the amount of $251,577.18, as well as pre-judgment interest, statutory interest, costs, and attorneys' fees. (*Id*. at PageID# 104.)

On May 21, 2025, Defendant filed its Answer. (Doc. 11.) On that same date, Defendant also filed a Motion to Dismiss Plaintiff's fraudulent misrepresentation claim (Count III) pursuant to Fed.

---

[5] On March 14, 2025, this Court issued an Order to Show Cause, finding that Plaintiff's jurisdictional allegations were insufficient for this Court to determine if it had diversity jurisdiction over this matter because Plaintiff failed to identify either (1) the State where it has its principal place of business; or (2) the citizenship of all of Defendant's members (and sub-members, if any) at the time the Complaint was filed. (Doc. No. 3.) Plaintiff addressed the first issue in its Amended Complaint but continued to fail to identify the citizenship of Defendant's members/sub-members. (Doc. No. 6.) Thus, the Court issued another Order to Show Cause on March 31, 2025, directing Plaintiff to remedy this deficiency by no later than April 2, 2025. (*Id*.) In response, Plaintiff filed its Second Amended Complaint, in which it identified Defendant's members/sub-members as all being citizens of the State of Florida. (Doc. No. 7.) As Plaintiff is a citizen of the State of Ohio, the Court is satisfied that diversity jurisdiction exists in this matter. *See also* Doc. No. 14 at PageID# 187.

R. Civ. P. 12(b)(6). (Doc. No. 12.) Plaintiff filed a Brief in Opposition to Defendant's Motion on July 8, 2025. (Doc. No. 20.) Defendant filed a Reply on July 22, 2025.[6] (Doc. No. 23.)

### III. Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)). For purposes of both Rule 12(b)(6) and Rule 12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly,* 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is

---

[6] Meanwhile, on June 3, 2025, Defendant filed an Amended Answer and Counterclaim for Breach of Contract. (Doc. No. 14.) The Court conducted a Case Management Conference ("CMC") on June 25, 2025, at which it set various case management deadlines including (among other things) a pleading amendment deadline of August 11, 2025. (Doc. No. 18-2 at PageID# 238.)

a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### IV. Analysis

In its Fraudulent Misrepresentation claim (Count III), Plaintiff alleges that Defendant "made false representations of fact to Plaintiff regarding Defendant's intention to supply Lotion Products, ability to provide Lotion Products, and the status of the inventory of Lotion Products to Plaintiff." (Doc. No. 7 at ¶ 45.) Plaintiff further alleges that "Defendant knew that the representations were false, as evidenced by Defendant's admission that he never sent the requested information promised despite claims that he did." (*Id*. at ¶ 46.) According to Plaintiff, "Defendant intended to induce Plaintiff to continue doing business with Defendant, knowing that Plaintiff would rely upon the representations." (*Id*. at ¶ 47.)

Plaintiff alleges that "[f]or example, after asking for a breakdown of how Plaintiff's funds had been used thus far, and Defendant claiming to have already provided it, on April 14, 2023, Defendant

admitted in an email to Plaintiff that he never sent it and that 'many ingredients are expired, and we are very upside down right now.'" (*Id.* at ¶ 48) (citing Doc. No. 7-2.) Plaintiff alleges that it "justifiably relied upon Defendant's representations" and "would not have paid Defendant a deposit for the Lotion Products had it known that Defendant would be unable to fulfill Lotion Product orders or be able to perform its other contractual obligations to Plaintiff in full or part." (*Id*. at ¶¶ 49-50.) Lastly, Plaintiff alleges that it "has been damaged as a result of Defendant's fraud." (*Id*. at ¶ 51.)

In its Motion, Defendant argues that Plaintiff fails to state a claim for fraudulent misrepresentation under either Ohio or Florida law[7] because Plaintiff does not adequately allege any facts permitting the conclusion that it relied on Defendant's purported fraudulent statements or that it suffered any alleged harm as a result. (Doc. No. 12-1.) Defendant maintains that Plaintiff's fraud claim is premised entirely on the allegation that, on April 13, 2023, one of Defendant's employees "claimed to have emailed plaintiff the breakdown invoice" for certain products that had been previously shipped in August 2022, but that just days later that individual "recanted and admitted that he did not actually send the breakdown." (*Id*.) Defendant argues that Plaintiff's fraud claim fails because Plaintiff "does not allege any actions taken in reliance on, or any harm resulting from, that alleged misrepresentation before [Defendant] allegedly 'recanted' just days later." (*Id*. at PageID# 157.) Lastly, Defendant asserts that Plaintiff's claim for attorney's fees is without merit because Plaintiff fails to allege any statutory or contractual basis for recovering fees. (*Id*. at PageID#s 160-161.)

---

[7] Defendant notes that Plaintiff is a citizen of Ohio, while Defendant is a citizen of Florida. (Doc. No. 12-1 at fn 1.) Defendant asserts that "the required elements of a claim of fraudulent misrepresentation and the framework for granting attorneys' fee awards are functionally identical in Ohio as in Florida, and a choice of law analysis is accordingly not required for purposes of deciding [Defendant's] partial Motion to Dismiss." (*Id*.)

In response, Plaintiff argues that it "has adequately alleged its entire fraudulent misrepresentation claim." (Doc. No. 20 at PageID# 250.) Plaintiff maintains that it is not required under Federal Rule of Civil Procedure 9(b) to allege specific facts indicating that it justifiably relied on Defendant's false representation. (*Id*. at PageID# 251.) Plaintiff maintains that it is required to adequately allege "the time, place, and contents of fraudulent misrepresentations, Defendant's scheme and intent, the fact that [Plaintiff] justifiably relied on the fraud, and the injury resulting from the fraud;" and that it has, in fact, done so. (*Id.* at PageID#s 251-252.) Plaintiff further asserts that, although it provided one specific example of Defendant's fraud in the Second Amended Complaint, it "believes that discovery will prove that Defendant's fraudulent misrepresentations started at the very beginning of the relationship." (*Id*. at PageID# 252.) Plaintiff requests that, "to the extent more information is necessary to make its pleading clear," Plaintiff seeks leave to "augment the pleadings." (*Id*. at PageID# 248.) Lastly, Plaintiff argues that, under Ohio law, it is entitled to attorney's fees by virtue of its fraud claim. (*Id.* at PageID# 252.)

In its Reply, Defendant acknowledges that "it is true as a general matter that 'the issue of justifiable reliance is one of fact' that cannot be resolved at the pleading stage" but asserts that "the issue here is that [Plaintiff] has not alleged *any* facts that could reasonably support a conclusion that it acted in reliance on the statement it has identified as fraudulent." (Doc. No. 23 at PageID# 284.) (emphasis in original). Defendant further argues that Plaintiff's conclusory allegation that it "justifiably relied on Defendant's representations" is insufficient to survive dismissal. (*Id*.) Lastly, Defendant maintains that, because Plaintiff has failed to sufficiently plead a fraud claim, it "has no basis to seek its fees and its demand for attorneys' fees must be stricken." (*Id*. at PageID# 285.)

9

Before proceeding to the merits, the Court feels compelled to address Defendant's assertion (which Plaintiff does not dispute) that the elements of a fraud claim are the same under both Ohio and Florida law. (Doc. No. 12-1 at PageID#158, fn 1.) Upon its own review, the Court finds that Defendant is not entirely correct. As discussed below, while Ohio courts require "justifiable" or "reasonable" reliance as an element of a fraudulent misrepresentation claim, Florida courts do not.

Under Ohio law, the elements of common law fraudulent misrepresentation are: "'(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.'" *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 562 n.4 (6th Cir. 2007) (quoting *Burr v. Stark County Bd. of Comm'rs*, 491 N.E.2d 1101, 1102 (Ohio 1986)).[8] *See also HSBC Bank USA, Natl. Trust Co. v. Teagarden,* 6 N.E.3d 678, 684 (Ohio App. 11th Dist. 2013); *Duff v. Centene Corp.*, 565 F.Supp.3d 1004, 1022 (S.D. Ohio 2021); *McIntyre v. Rice*, 2003 WL 21710726 at * 3 (Ohio App. 8th Dist. July 24, 2003). A plaintiff must prove all elements to recover on its claim. *Graham v. American Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003).

---

[8] Some Ohio courts articulate the elements of a fraudulent misrepresentation claim slightly differently, as "'(1) a material false misrepresentation; (2) knowingly made; (3) with intent of misleading another into relying on it; (4) reasonable reliance on the misrepresentation; and (5) injury resulting from the reliance.'" *Templeton v. Winner Enterprises, Ltd.*, 248 N.E.3d 791, 805-806 (Ohio App. 7th Dist. 2024) (quoting *Isaac v. Alabanza Corp.*, 2007 WL 901596 at * 4 (Ohio App. 7th Dist. March 22, 2007). *See also Nations Lending Corp. v. Patille*, 2023 WL 5671940 at * 5 (N.D. Ohio Aug. 23, 2023) (same). Under either formulation of the elements, under Ohio law, a plaintiff must plead 248 NE"justifiable" or "reasonable" reliance on the alleged misrepresentation(s), and injury resulting therefrom.

Under Florida law, a cause of action for fraudulent misrepresentation has the following four elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *In re Harris*, 3 F.4th 1339, 1349 (11th Cir. 2021) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).  *See also Arlington Pebble Creek, LLC v. Campus Edge Condominium Association, Inc.*, 232 So.3d 502, 505 (Fla. App. 1st Dist. 2017) (same).  Unlike Ohio, the Florida Supreme Court has expressly held that "[j]ustifiable reliance is not a necessary element of fraudulent misrepresentation."  *Butler,* 44 So.3d at 105.

Nonetheless, for the following reasons, the Court finds that it need not decide, at this time, whether Ohio or Florida law applies. Here, Defendant does not argue that Plaintiff failed to sufficiently allege that it justifiably (or reasonably) relied on Defendant's alleged April 2023 misrepresentation.  Rather, Defendant asserts that Plaintiff's fraudulent misrepresentation claim fails because Plaintiff "has failed to allege any facts permitting the conclusion that it *relied on* [Defendant's] purported representation." (Doc. No. 12-1 at PageID# 159) (emphasis added).  In other words, Defendant argues that Plaintiff failed to sufficiently allege *any* reliance on this particular representation. Although justifiable (or reasonable) reliance is not an element of a fraudulent misrepresentation claim under Florida law, Florida courts do require a plaintiff to plead "consequent injury by the party acting *in reliance on* the representation." *In re Harris*, 3 F.4th at 1349 (emphasis added).  *See also Rashada v. Hathcock*, 780 F.Supp.3d 1212, 1224 (N.D. Fla. 2025) (noting that "*justifiable* reliance is not required—plausible allegations of plain reliance will do.") (emphasis in original).  Thus, under either Florida or Ohio law, Plaintiff herein must adequately plead reliance on Defendant's alleged misrepresentation and injury resulting from that reliance.

11

In addition, it is undisputed that the heightened pleading standard under Federal Rule 9(b) applies to Plaintiff's fraudulent misrepresentation claim. Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this particularity requirement, "a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005) (citations and internal quotations omitted). "The rationale of Rule 9(b) is (1) to alert parties to the particulars of the allegations against them so they can intelligently respond; (2) to prevent 'fishing expeditions'; (3) to protect reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters." *Michael J. Cavill 2012 Irrevocable Trust v. BMC Growth Fund LLC*, 2018 WL 4690792 at * 2 (S.D. Ohio Sept. 28, 2018) (citing *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466–67 (6th Cir. 2011)). "The threshold test is whether the complaint places the defendant on 'sufficient notice of the misrepresentation,' allowing the defendants to 'answer, addressing in an informed way plaintiffs [sic] claim of fraud.'" *Coffey v. Foamex L.P.,* 2 F.3d 157, 162 (6th Cir. 1993) (citation omitted).

Applying the heightened pleading standard set forth above, the Court finds that Plaintiff has failed to sufficiently allege a fraudulent misrepresentation claim under either Ohio or Florida law. As set forth *supra*, to satisfy Rule 9(b)'s heightened pleading standard, Plaintiff must allege (among other things) the time, place, and content of the alleged misrepresentation on which he or she relied. *See, e.g.*, *Walburn*, 431 F.3d at 972. Here, the only specific example of Defendant's alleged false representations of fact set forth in the Second Amended Complaint is Plaintiff's allegation that "during a phone call on April 13, 2023, Defendant claimed to have emailed Plaintiff the breakdown

12

invoice for the August 2022 initial partial shipment" but Defendant "then recanted and admitted that he did not actually send the breakdown." (Doc. No. 7 at ¶¶ 20, 48.) These allegations reference Exhibit B to the Second Amended Complaint, which consists of an email chain between the parties' representatives on April 12, 13 and 14, 2023. (Doc. No. 7-2.) These emails indicate that it was on April 14, 2023 that Defendant's employee, Aaron Bouren, "recanted" Defendant's previous statement that Defendant had emailed the breakdown to Plaintiff. Thus, Defendant's alleged misrepresentation (i.e., that Defendant had emailed the breakdown invoice to Plaintiff) occurred on April 13, 2023 and was recanted by Defendant the very next day on April 14, 2023.

The Court finds that this is not sufficient to allege a claim for fraudulent misrepresentation. Specifically, and upon careful review of the Second Amended Complaint, the Court finds that Plaintiff does not sufficiently allege either that it relied on the April 13, 2023 misrepresentation, or that it suffered an injury because of its reliance on this particular misrepresentation. Indeed, given that Mr. Bouren "recanted" within twenty four hours of the April 13, 2023 misrepresentation, it is difficult to conceive of how Plaintiff could have relied on this representation and/or suffered an injury as a result of that reliance.

Plaintiff insists, however, that it sufficiently alleged both reliance and injury because the Second Amended Complaint expressly alleges that "Plaintiff justifiably relied on Defendant's representations" and "Plaintiff has been damaged as a result of Defendant's fraud." (Doc. No. 7 at ¶¶ 49, 51.) The Court rejects this argument. As Defendant correctly notes, Plaintiff does not allege any facts in support of either of these conclusory allegations. In other words, Plaintiff has failed to sufficiently allege any facts suggesting either that (1) Plaintiff relied on Defendant's April 13, 2023 misrepresentation about the breakdown invoice, or (2) Plaintiff was injured as a result of its reliance

13

on the April 13, 2023 misrepresentation. Plaintiff's general allegations that it "relied on Defendant's representations" and was "damaged as a result of Defendant's fraud" are wholly conclusory and untethered from the only specific misrepresentation identified in the Second Amended Complaint. *See, e.g., Haynes v. Ally Financial, Inc.*, 2024 WL 4973488 at * 4 (Ohio App. 9th Dist. Dec. 4, 2024) (affirming dismissal of fraud claim where plaintiff failed to allege "what act she took in reliance on the alleged misrepresentation"); *Wick v. Ach*, 139 N.E.3d 480, 485-486 (Ohio App. 1st Dist. 2019) (affirming dismissal of fraud claim where plaintiff "failed to plead any facts to show that he actually relied on these statements to his detriment"). *See also Patterson v. Downtown Medical and Diagnostic Center, Inc.*, 866 F. Supp. 1379 (M.D. Fla. 1994) (dismissing fraud claim where "Plaintiff does not plead any facts to support how she relied to her detriment on representations by Defendant or what damages she suffered as a result of such reliance."); *Owens-Benniefield v. Nationstar Mortgage LLC*, 258 F.Supp.3d 1300, 1319 (M.D. Fla. 2017) (dismissing fraud claim where "[t]he Amended Complaint does not plausibly plead that [plaintiff] relied on [defendant's] misrepresentation that she owed a debt.")

For similar reasons, the Court rejects Plaintiff's argument that its fraud claim survives because the Second Amended Complaint alleges generally that "Defendant made false representations of fact to Plaintiff regarding Defendant's intention to supply Lotion Products, ability to provide Lotion Products, and the status of the inventory of Lotion Products to Plaintiff." (Doc. No. 7 at ¶ 45.) The Court finds that this allegation falls far short of Rule 9(b)'s particularity requirements. Most notably, this broad allegation fails to identify the time or place of any of Defendant's alleged false representations. *See Gozion v. Cleveland School of the Arts Board of Trustees*, 245 N.E.3d 19, 26 (Ohio App. 8th Dist. 2024) (affirming dismissal of fraud claim where plaintiff "does not identify who

14

made the purported promises, when the promises were made, the amount promised, or specific circumstances surrounding the alleged fraudulent conduct."); *First-Knox Natl. Bank v. MSD Properties, Inc.,* 47 N.E.3d 490, 495 (Ohio App. 5th Dist. 2015) (affirming dismissal of fraud claim because plaintiffs "did not set forth the time, place, or content of the false representation and generally allege that they were misled by appellees at the time they entered the lease. The claim does not set forth the fact misrepresented or the nature of what was obtained or given as a consequence of the fraud.").

Moreover, Plaintiff fails to identify who made any of Defendant's alleged false representations. Companies such as Defendant speak (and make alleged fraudulent misrepresentations) through their agents, but Plaintiff does not name a single individual employee of Defendant anywhere in the body of its Second Amended Complaint. Plaintiff's failure to identify which specific employees of Defendant made any of the unidentified "false representations of fact" further demonstrates Plaintiff's failure to adequately plead its fraud claim under Rule 9(b). *See Nations Lending Corp. v. Patille*, 2023 WL 5671940 at * 6 (N.D. Ohio Aug, 23, 2023) ("Patille's silence on who made the alleged misrepresentations is another reason his counterclaim fails to meet Rule 9(b)'s requirements.")

Accordingly, and for all the reasons set forth above, the Court finds that Plaintiff has failed to sufficiently allege a fraudulent misrepresentation claim under either Ohio or Florida law. And because Plaintiff acknowledges that its request for attorneys' fees is premised entirely on its fraud claim (*see* Doc. No. 20 at PageID# 252), the Court finds that Plaintiff's request for attorneys' fees is subject to dismissal as well.

Lastly, the Court rejects Plaintiff's request that, "to the extent more information is necessary to make its pleading clear," it be permitted to "augment the pleadings." (Doc. No. 20 at PageID# 248.) Plaintiff does not provide any further explanation regarding why it believes leave to amend should be granted or what additional factual allegations it would include in any proposed third amended complaint to cure the deficiencies in the Second Amended Complaint. Nor does Plaintiff attach a copy of any proposed third amended complaint to its Brief in Opposition.

Plaintiff's request for leave to amend is denied. Under Rule 15, Plaintiffs had twenty-one (21) days after the filing of Defendant's Motion to Dismiss to amend their Complaint as a matter of course. *See* Fed. R. Civ. P. 15(a)(1)(B). Moreover, under this Court's Case Management Order, Plaintiff had until August 11, 2025 to amend its pleadings without leave of court. (Doc. No. 18-2 at PageID# 238.) Plaintiff failed to take advantage of either of these opportunities. Rather, Plaintiff elected to wait for this Court to rule on Defendant's Motion and only seek amendment (via a cursory, one-sentence request) in the event that the Court determined "more information is necessary to make its pleading clear." (Doc. No. 20 at PageID# 248.) But, as the Sixth Circuit has explained, "Plaintiffs [are] not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Begala v. PNC Bank, Ohio, Nat'l Ass'n,* 214 F.3d 776, 784 (6th Cir. 2010).

Rather, to properly seek leave to amend, Plaintiff was required to do more than simply include a perfunctory, unexplained request for leave to amend in its Brief in Opposition. Plaintiff was required to file a fully briefed and supported motion to amend or, at the very least, provide this Court with a proposed third amended complaint accompanied by an explanation of how the third amended complaint would resolve the deficiencies in the Second Amended Complaint. *See Salazar v.*

*Paramount Glob.*, 133 F.4th 642, 653 (6th Cir. 2025) ("Salazar filed neither a motion to amend nor a proposed amended complaint.  Instead, he requested leave to amend his complaint only in a single cursory footnote at the end of his response to Paramount's motion to dismiss *** This 'cursory request' did not 'explain how a second amended complaint would resolve the problems in the first.' So the district court did not abuse its discretion in dismissing Salazar's complaint with prejudice.) (quoting *Crosby v. Twitter, Inc.,* 921 F.3d 617, 628 (6th Cir. 2019)) (internal citations omitted).

Just as in *Salazar*, Plaintiff herein did not file a separate motion to amend its Complaint or provide this Court with a proposed third amended complaint along with an explanation of how the third amended complaint would resolve the problems in the Second Amended Complaint. Accordingly, Plaintiff's barebones request for leave to amend is denied.

## V.     Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss, in part, Plaintiff's Complaint (Doc. No. 12) is GRANTED.  Count III of the Second Amended Complaint and Plaintiff's request for attorneys' fees are both DISMISSED.  Plaintiff's request for leave to amend is DENIED.

**IT IS SO ORDERED.**

Date:  December 1, 2025

 s/Pamela A. Barker
PAMELA A. BARKER
U. S. DISTRICT JUDGE